Burke, J.
The central issue on this appeal is the viability of a defense to an action on an employment contract based upon the conceded illegality of a provision in plaintiff’s employment contract allowing her employers, the defendants, to suspend her without pay and still claim the exclusive right to her services.
The plaintiff is a professional ice skater, apparently of considerable talent. In 1952, when she was but 15 years of age, she was hired by the defendants to perform in their well-known traveling ice show, the Ice Follies. Four years later plaintiff and defendants entered into the contract presently in issue. This contract was to have a term of one year, with two further option periods of one year each. Both options were exercised by defendants.
Under the agreement plaintiff agreed that during the period covered by the contract she would not ‘ ‘ render the services * * * required of [her] for any other person, firm or corporation ” without the written consent of the employers. She also agreed to “ abide by and comply with all reasonable rules and regulations ” deemed necessary by the employers in connection with her employment. The employers reserved the right to cease paying any compensation to plaintiff in the event of her failure to perform her services ‘ ‘ in accordance with this agreement ”. The contract provided that it was to be governed by the laws of California (and the parties agree that this is the law we must apply).
In October, 1958, while the second option period still had 11 months to go, defendants suspended plaintiff, without pay, from the show on the ground that she was overweight. The plaintiff, *507 who had previously had trouble with her weight, acquiesced in the employers’ decision, returning to her home and embarking on a diet to lose weight.
Later, in January of 1959, plaintiff attempted to rejoin the show which was then playing in Philadelphia. She was not successful in obtaining reinstatement. Later in that month, following another unsuccessful attempt to rejoin the show, this time in New York City, plaintiff, through her attorney, demanded either her reinstatement or a release from her contract with defendants so that she could obtain employment elsewhere as a professional ice skater. Defendants have conceded that they refused to release plaintiff from her contract until the expiration of the agreement.
Following this, plaintiff apparently did not try to secure employment with another ice show, but she did take part in three or four one-day skating exhibitions at a resort hotel and she performed in a stage play which ran for one week. She claims that she was able to earn only “ about ” $400 in this period and that when she applied for unemployment insurance she was told that she was not eligible because her employers had sent the unemployment insurance office a letter saying she was still under contract to them.
Subsequently, plaintiff brought the present action for salary withheld, contending that the conduct of the defendants was unreasonable and, therefore, in breach of her employment contract and that, in any event, her employers should have released her from her contract.
There have been two trials of the action. The first resulted in a jury verdict for plaintiff. This judgment, however, was reversed by the Appellate Division on evidentiary grounds, with that court holding that the proof on the first trial had centered too much on plaintiff’s weight at the time of trial (plaintiff was allowed to exhibit herself in skating attire before the jury) rather than on her weight at the time of her suspension (17 A D 2d 660.)
On the second trial the court, apparently under the impression that introduction of any evidence of plaintiff’s present weight had been held improper by the Appellate Division, refused to allow plaintiff to testify as to her then present weight. The jury returned a verdict against plaintiff and it is from the *508 affirmance of the judgment entered thereon that plaintiff now appeals.'
The barring of testimony as to plaintiff’s present weight is urged in this court as grounds for reversal, with the plaintiff arguing that such evidence was clearly relevant to the issue of whether defendants acted reasonably in suspending her. Determination of relevancy and the conduct of a trial so as to avoid undue emphasis upon matters not really in issue, however, are matters resting largely in the discretion of the trial court. It is a close question whether the relevancy of plaintiff’s then present weight was outweighed by the likelihood that introduction of such evidence would confuse or mislead the jury (see Richardson, Evidence [Prince, 9th ed., 1964], § 150), but, in any event, we conclude that the exclusion of this evidence, even if it was error, was not sufficiently prejudicial to warrant reversal in this case. The jury had an opportunity to observe the plaintiff for an extended period during the course of this trial and as people of ordinary intelligence and experience could be expected to have made a rough estimate of her present weight and to have considered how she probably appeared attired in skating costume at the time of her suspension.
Plaintiff fares considerably better on a law question presented by her appeal. She urges here, as she claimed before the trial court, that, irrespective of the reasonableness or unreasonableness of her suspension, she was entitled as a matter of law to judgment, on the ground that it was ‘ ‘ illegal and contrary to public policy ’ ’ for her employers to suspend her and, at the same time, refuse to release her from her contract. This claim is based upon section 16600 of the California Business and Professions Code, which provides: “ Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void.”
The defendants do not challenge this view of the contract under California law; in fact, they concede that to the extent that the contract provided that plaintiff could be suspended without pay from her contract and still be barred from taking other employment it was void. (There is some question whether the California statute in fact applies to contracts such as that before us. Compare Loew’s, Inc. v. Cole, 185 F. 2d 641, 657 [9th Cir.], *509 with Crespinel v. Color Corp. of America, 160 Cal. App. 2d 386 [Dist. Ct. App., Cal.]. Defendants, however, are to be held to their concession. See Cohen and Karger, Powers of the New York Court of Appeals, p. 629.) Defendants, rather, attempt to utilize the alleged illegality of the clause they incorporated in the contract as a defense. Their theory is that, since “ they were powerless to prevent her from working for anyone else during her suspension period ’ ’, she has no proper claim against them for their failure to release her from her apparent (though void) express obligation under the contract not to work as a performer for others. Allowing the defendants to succeed in such a defense, however, would, to our way of thinking, be manifestly unjust. It would serve merely to rob of the benefits of the statute an innocent and unknowing member of the class it was designed to protect.
Bather, we believe, as plaintiff urges, that the California statute must be read not only as declaring void any provision in an employment contract allowing the suspension of an employee without pay and barring his taking other employment, but also as conditioning any provision for suspension without pay in an employment contract upon the employer’s agreement to the suspended employee’s taking other employment during the period of his or her suspension. Where the employer refuses to release the employee from the exclusive employment provisions of the contract (and here there was concededly an outright refusal), the employee ought to be allowed to recover all earnings lost as a result of such refusal.
Strictly speaking, such a recovery is premised not upon the contract of employment but, rather, upon the fact that, in order to .secure to employees the protection against such agreements that the California Legislature sought to provide them, we feel the statute must be read as giving rise to a cause of action on the employee’s part where an employer has wrongfully sought to hold the employee to such an illegal contract provision.
. An alternative theory of recovery we might have adopted here would be to allow plaintiff recovery on the contract. This would be consistent with “ additional provision 8 ” of the contract which provides, in part, that “ wherever there is any conflict between any provision of this agreement and any material statute * * * contrary to which we have no legal right to *510 contract, stich statute shall prevail, but in such event the provisions of this agreement affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.” Thus, the right to suspend plaintiff without pay conferred upon defendants by the contract might be held, by reason of “ additional provision 8 ” and the California statute, to be limited, despite the contract’s indication to the contrary, to the extent that the defendants could no longer claim the exclusive right to her services. Any suspension of plaintiff, with the defendants claiming the continued exclusive right to her services, could then be considered not the sort of suspension allowable under the contract and, therefore, in breach of the agreement.
We have determined, however, that the requirements of justice do not demand we give the contract this perhaps strained reading. The jury has found that plaintiff’s suspension was reasonable. Perhaps she might, despite this, have been able to secure other employment — and perhaps not. If in fact she could not have obtained other employment, it little serves the purpose for which the California statute was passed for us to allow her to recover on the contract. Therefore, we believe it is enough that we reverse and remand to the Supreme Court, where plaintiff should be allowed to put in proof as to her lost earnings. At the very least she is entitled to the unemployment compensation she lost through defendants’ actions.
The first cause of action in plaintiff’s complaint alleges sufficient facts entitling her to judgment on the law under our reading of this statute. These facts were established on the trial and plaintiff at the close of her case moved for judgment on the law. To this she was entitled, and we remand only for the purpose of allowing her to prove her damages, as described above.