■ R & I ELECTRONICS, INC., Respondent-Appellant, v CARL H. NEUMAN, Doing Business as DOCTORS HOSPITAL, Appellant-Respondent.—In an action to recover damages for breach of contract, the parties cross-appeal from a judgment of the Supreme Court, Nassau County, entered June 8, 1977, which, after a nonjury trial, was in favor of the plaintiff in the principal amount of $74,104.52. Judgment modified, on the law and the facts, by (1) reducing the award therein to $8,916, which shall represent a recovery as to the first cause of action, and (2) adding thereto a provision

dismissing the second and third causes of action except as to the claim for loss of profits. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to Trial Term for a new trial on the claim for loss of profits. In this case the plaintiff entered into a contract with a hospital to install and maintain television sets which were to be rented to patients. This arrangement had existed for some time when in 1971 the individual defendant purchased the hospital. On June 1, 1972, the parties entered into a contract which provided that in return for a payment of a bonus of $10,000 to defendant and the continued repair and maintenance of the television sets, the plaintiff would be entitled to 60% of the gross rentals thereof until the expiration of the contract on January 1, 1981. Trial Term found, and its finding is not challenged on appeal, that the defendant breached the contract in an effort to force plaintiff out of the hospital and replace its black and white sets with color television sets. Both parties challenge the amount of damages awarded by Trial Term. Under its *first cause of action,* plaintiff sought to recover its 60% share of television rentals collected by defendant but not paid over to plaintiff. The proof established that the breach occurred in the early days of July, 1974, when the defendant caused all of the plaintiff's televisions to be removed from the hospital and placed in storage. However, Trial Term only permitted recovery of rentals due and owing until April 18, 1974, the date upon which the action was commenced. The court should have granted plaintiff's motion to conform the pleadings to the proof and awarded plaintiff the sum of $8,916 as its 60% share of the rentals collected but withheld up to July 8, 1974, with interest thereon from that date. In its *second cause of action* plaintiff sought to recover the $10,000 bonus paid to defendant at the time the contract in question was entered into. Trial Term allocated the bonus over the life of the contract and awarded to plaintiff the proportional share attributable to the period from the date of breach to the date of expiration of the contract. This was error. Damages awarded in a breach of contract action should place a plaintiff in the same position as it would have been if the agreement had not been violated. The court should look to the contract to determine what benefits plaintiff would have received if the contract had been fully performed. Viewed in this light, the $10,000 bonus was an inducement to enter into the contract. Had the contract been fully performed, no part of this money would have been returned to plaintiff. Accordingly, an award of lost profits under the third cause of action will make plaintiff whole and thus the second cause of action should have been dismissed. The *third cause of action* sought to recover damages for the cost of installation, the value of the equipment and loss of profits. Trial Term did not award damages for equipment because the defendant had removed the television sets from the hospital and had stored them for return to plaintiff. However, it awarded $28,662 as the depreciated value of the installations in the hospital which were not removable. In our opinion this award was error because the contract provided that the equipment and installations were to remain the property of the plaintiff during the life of the contract but were to become the property of the defendant at the expiration of the contract. Accordingly, if the contract had been fully performed plaintiff would have received its share of the rentals during the term of the agreement and would have lost its proprietary interest in the equipment and installations at the expiration thereof. A proper award of lost profits will make plaintiff whole. The remaining issue in the case concerns the proper calculation of loss of profits under the third cause of action asserted in plaintiff's complaint. When the television sets were removed from the premises, plaintiff was entitled to the

profit it would have received during the remaining six and one-half years of the contract. Profits will be awarded as long as they are not uncertain, contingent or conjectural, even though the amount cannot be determined with absolute certainty *(Wakeman v Wheeler & Wilson Mfg. Co.,* 101 NY 205). Profit is computed as the amount the plaintiff would have realized under the contract if it had been faithfully carried out, less the necessary expense of performance on its part. The plaintiff must supply some basis of computation for determining the amount of the injury. Elements of costs which are to be taken into consideration depend upon the particular circumstances of each case, but generally include the cost of labor, materials and superintendence (13 NY Jur, Damages, § 112). Direct costs are to be deducted from the contract price, and are determined by what the plaintiff would have had to pay if the contract had not been breached (22 Am Jur 2d, Damages, § 178, p 255). Determination of prospective profits is inherently problematical and difficult of proof. Accordingly, courts ought not to be "too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits" *(Dart v Laimbeer,* 107 NY 664, 669; *Bagley v Smith,* 10 NY 489; *Wakeman v Wheeler & Wilson Mfg. Co., supra).* However, in the case at bar, although proof was offered of gross receipts for past years, only scant evidence was introduced to show expenses of performing the contract. Apparently, the books and records of the business were not produced by plaintiff, nor were they subpoenaed by the defendant. "Plaintiff seeking compensatory damages had the burden of proof and should have adopted and presented to the court a proper method and basis for ascertaining the damages it sought to recover" *(Alexander's Dept. Stores v Ohrbach's, Inc.,* 269 App Div 321, 329). Trial Term calculated plaintiff's loss of profits by multiplying a fraction of the yearly salary of the president of the plaintiff (representing the ratio that the number of television sets provided to the hospital bore to all the sets used in plaintiff's business) by seven and one-half years. Apart from the fact that the contract had only six and one-half, rather than seven and one-half years to run, such a method of calculating damages ignored the very real possibility that some of plaintiff's contracts might have been more advantageous to it than others, that plaintiff's president may not have taken all the company profits out of the business in the form of salary, or that the breach of the contract by defendant may have resulted in some savings of expenses. In some cases the breach of a contract may prevent a loss as well as cause one, and, insofar as it prevents loss, the amount saved should be credited to the wrongdoer (11 Williston, Contracts [3d ed], § 1339, p 205). However, that rule does not always apply to overhead costs. The wrongdoer is entitled to a deduction of only such business costs as can reasonably be saved by reason of his breach. Salaries of officers and employees are to be deducted from expenses normally incurred by plaintiff in performing its contract where the breach makes it reasonable for the plaintiff to make a reduction in his work force. If the defendant's breach causes a reduction in the plaintiff's business but does not require the layoff or discharge of employees because they are needed to fulfill the plaintiff's other contracts, a proportional share of their salaries should not be deducted from plaintiff's expenses (see 5 Corbin, Contracts, § 1038, pp 239-240). On the retrial the court should determine what overhead costs attributable to this contract, including the president's salary, were, or could have been, saved by defendant's breach and it should deduct only such savings from plaintiff's expenses. On this record there is insufficient evidence to compute the plaintiff's net loss of profits. Accordingly, there must be a new trial limited to that issue. Hopkins, J. P., Damiani, Rabin and Margett, JJ., concur.