■ R & I ELECTRONICS, INC., Respondent, v CARL H. NEUMAN, Doing Business as DOCTORS HOSPITAL OF FREEPORT, Appellant. — In an action to recover damages for breach of contract, defendant appeals from a judgment of the Supreme Court, Nassau County, entered November 2, 1979, which, after a nonjury trial, was in favor of the plaintiff in the principal amount of $69,285.58. Judgment modified, on the law, by reducing the principal award to $66,815.58. As so modified, judgment affirmed, without costs or disbursements, and case remitted to Special Term for entry of an appropriate amended judgment. The parties entered into an agreement on June 1, 1972 whereby the plaintiff was to install and maintain television sets in defendant's hospital which sets, in turn, were to be rented to patients. In early June, 1974 the contract was breached by the defendant. The remaining period under the agreement was six and one-half years. Upon a prior appeal, we remanded this case for retrial on the issue of lost profits. *(R & I Electronics v Neuman,* 66 AD2d 836.) At the new trial the sole witness to testify was Harry Siegel, president and sole owner of the plaintiff corporation. Siegel produced monthly and semimonthly summaries or resumes of gross receipts under the contract for the period of June 1, 1972 through June 30, 1974. Special Term computed a monthly average for the gross receipts produced, and multiplied this amount by 12 to establish an annual

average for income. From the amount projected for annual income, Special Term deducted repair costs, television set replacement costs less the resale or salvage value of old equipment, employees' wages attributable to the contract, and a portion of the president's salary. This latter expense was arrived at by multiplying the number of hours Siegel worked at defendant's hospital each week by an hourly wage apparently based on Siegel's annual salary. Excluded from costs attributable to the contract was a proportion of accountant's fees, insurance and transportation costs. Thus, the court arrived at an annual profit figure which was multiplied by six and one-half years, the remaining time under the parties' agreement. The defendant, on appeal, claims the court erred in admitting into evidence the résumés or summaries of gross profits. It is the defendant's primary contention that the best evidence rule is applicable and the original bills from which the summaries were prepared should have been produced. We disagree. It has been recognized that summaries or balances of accounts may be produced to prove aggregate profits or receipts without the need to produce those documents which set forth the underlying data. (4 Wigmore, Evidence [Chadbourne rev], § 1244, pp 578-579.) Business summaries have been deemed to be independent from the writings or documents upon which they are drawn. (Id.) In the instant case, Siegel prepared résumés of gross receipts for the period of June, 1972 to July, 1974 on a month-to-month basis. He would tally the amounts owed to plaintiff from his own records and those of the defendant. Siegel would then draw up bills and a summary based upon the gross receipts. From the record it is clear that the résumés have an independent business function and were separate and distinct from the corresponding bills. As such the résumés are independently admissible. Siegel established that the writings were prepared in the regular course of business and vouched for their authenticity. Thus, they were properly admitted into evidence. The defendant also contends that Special Term should have deducted insurance costs, accountant's fees and transportation expenses insofar as they were attributable to the contract. We agree. This court, in ordering a remand, noted that "the court should determine what overhead costs attributable to this contract *** were *** saved by defendant's breach" (R & I Electronics v Neuman, supra, p 838). Siegel testified that he had four similar type contracts in effect during the period in question. With respect to each expense noted above, Siegel attributed a one-fourth share to the contract with defendant. Annual insurance costs on the contract were $100, or $650 over the life of the contract. Transportation costs were $130 per year and therefore $845 for the remaining portion of the contract. Accountant's fees attributed to the contract were $150 annually and $975 for the six and one-half year period. The judgment should be reduced by the amount of $2,470. (See 5 Corbin, Contracts, § 1038, pp 239-240.) Mollen, P. J., Cohalan, Margett and O'Connor, JJ., concur.