WILLIAM C. STEVENS, Respondent, v DORIS R. KIRBY, Doing Business as PARMA PAUPERS DEN, Appellant.

Fourth Department, May 14, 1982

### APPEARANCES OF COUNSEL

*Ronald J. Passero (James M. Byrnes* of counsel), for appellant.

*Faraci, Guadagnino, Lange & Johns (Joseph A. Regan* of counsel), for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

Defendant, a tavern owner, appeals from a judgment which awarded plaintiff compensatory and punitive damages for injuries that he sustained in a fight involving patrons of the tavern in its parking lot on December 30, 1977. Liability was premised on defendant's negligence in failing to take reasonable precautions for plaintiff's safety; the jury found no violation of the Dram Shop Act (General Obligations Law, § 11-101, subd 1). The central question raised on this appeal concerns the admissibility in evidence of an investigative report of the New York State Liquor Authority as a business record (CPLR 4518, subd

[a]) to establish defendant's negligence. We hold that the report was improperly admitted into evidence at trial and for that reason we reverse the judgment.

Proof at trial established that plaintiff and his companions became uneasy when other patrons began roughhousing in the bar. Plaintiff complained to the bartender who said that she would try to quiet them down. An unknown patron then came to plaintiff's table and asked in a challenging voice "what did you say to me?". The patron left without incident but returned a few minutes later with another individual who stood silently staring at plaintiff and his friends for two or three minutes. Plaintiff became nervous and felt that his group was the focus of attention and that there might be "trouble". A few minutes later there was the sound of breaking glass and a glass struck plaintiff in the back. Plaintiff and his friends decided to leave. When they left, a group of 12 to 15 people followed them out the door into the parking lot. A fight soon ensued in which plaintiff suffered an eye injury.

At the time of the incident a female bartender and a youth, who was employed to make sandwiches, were working in the bar. Neither did anything to stop the fight and the police were summoned by plaintiff after he was able to leave the scene. Plaintiff claims that defendant is liable for failure to discharge her duty to maintain safe conditions on the premises and to take reasonable steps to prevent or minimize the risk of harm from a breach of the peace.

At the trial plaintiff introduced evidence that Monroe County Deputy Sheriffs had responded to four prior disturbances at the tavern which had resulted in the arrest of patrons for disorderly conduct, assault and other charges. These incidents occurred during a four-month period nearly one and one-half years before the event which resulted in plaintiff's injury. Three of these incidents were described as involving intoxicated patrons who allegedly exhibited knives and were engaged in fights or conduct of a disorderly nature. The fourth incident involved a minor altercation which resulted in the filing of disorderly conduct charges and which came to the attention of the deputies during an investigation of a larceny complaint.

This proof was contained in an "Alcoholic Beverage Control Report of Investigation" which was received into evidence as a business record of the Liquor Authority over defendant's objection. The report reflected that the defendant had been issued letters of warning and advice by the Liquor Authority relative to two of the incidents.

The investigative report was based on a Liquor Authority investigator's review of the police reports concerning the incidents, his interviews with the reporting deputies, and his examination of court records. It summarized the information contained in the police reports, contained entries made by the investigator of the substance of his interviews, and included general opinions and conclusions of the Deputy Sheriffs that the operator of the tavern "cannot control his patrons and allows them to drink until they become intoxicated and then the trouble breaks out", that the tavern is "a habitual trouble spot", and that the rule rather than the exception is that the patrons are intoxicated when the police are called to the premises. In summarizing the police report concerning an incident on August 8, 1976, the investigator noted that the "[r]eport indicates premises is disorderly and the owner fails to control patrons and alcoholic beverages are sold to intoxicated persons." He also wrote his conclusion that the police reports "further indicate, in most cases, persons involved were 'overly intoxicated' and the person in charge * * * allows fights and general disorderly conditions to exist at the subject premises."

Copies of the police reports were attached to the Liquor Authority report but were not received in evidence as part of the report because the court found that they were based on information received from people with no business duty to provide it. No proof was offered to establish the admissibility of the police reports as business records and they were not independently offered into evidence. The Liquor Authority report was received in evidence by the trial court on the issue of foreseeability and the jury was charged that the report "may be considered by you solely on the question of whether a reasonably prudent tavernkeeper would have foreseen that it was necessary to take some steps to protect" patrons of the bar.

A tavern owner owes a duty to his patrons to protect them from personal attack when he has reasonable cause to anticipate conduct on the part of third persons which is likely to endanger their safety (see *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519; *Taylor v Centennial Bowl,* 65 Cal 2d 114; Restatement, Torts 2d, § 344; Prosser, Torts [4th ed], § 56, pp 348-350; see, also, *De Gelorm v Pelc,* 52 Misc 2d 336; *Shank v Riker Rests. Assoc.,* 28 Misc 2d 835, affd 15 AD2d 458). The nature and scope of this duty is derived from the general concept of foreseeability: "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation" (*Palsgraf. v Long Is. R.R. Co.,* 248 NY 339, 344; see *Havas v Victory Paper Stock Co.,* 49 NY2d 381, 385-386; *Basso v Miller,* 40 NY2d 233).

Proof of prior disturbances at a tavern may be relevant on the issue of foreseeability. Such proof tends to establish that the owner has notice of danger to his patrons, the extent of the danger to be guarded against, and, thus, the nature of his duty (see *Taylor v Centennial Bowl, supra,* p 125). Whether the circumstances attending the earlier incidents are sufficiently similar to the relevant conditions prevailing at the time plaintiff was injured is to be determined by the issues presented in each case (see *Kaplan v City of New York,* 6 AD2d 489, 491), and this determination rests in the sound discretion of the Trial Judge (see *Radosh v Shipstad,* 20 NY2d 504, 508).

The issue present in this case is whether it was foreseeable that plaintiff would be physically assaulted while on the tavern premises. Evidence of other prior incidents involving breaches of the peace would be admissible on this issue (see *Gallagher v City of New York,* 30 AD2d 688; *Taylor v Centennial Bowl, supra,* p 125). The jury could logically conclude from such proof that the assault in the parking lot was a significant foreseeable possibility which defendant had a duty to guard against and that the defendant failed in her obligation "to take reasonable precautionary measures to minimize the risk and make the premises safe for the visiting public" (*Nallan v Helmsley-Spear, Inc., supra,* p 520).

The investigative report of the Liquor Authority, however, was not the vehicle for the admission of this evidence since it cannot be deemed to be independent from the police reports from which it was drawn. The fact that the Liquor Authority report was prepared and kept in the ordinary course of business of the Liquor Authority and that the deputies are under an obligation to report to the Liquor Authority violations of the Alcoholic Beverage Control Law does not insure the admissibility of such a report as a business record under CPLR 4518.

A report may be admitted pursuant to CPLR 4518 as proof of the facts recorded, if the informant was under a business duty to perceive the event and to transmit information concerning it to an entrant who was under a business duty to record it (*Matter of Leon RR,* 48 NY2d 117). Police reports may be admissible as business records if the police officer was a witness to the events disclosed in the record or if the person giving the police officer the information contained in the report was under a business duty to relate the facts to him (*Johnson v Lutz,* 253 NY 124). Otherwise, the facts recited in a statement may be proved by a business record only if the statement qualifies as a hearsay exception, such as an admission (*Toll v State of New York,* 32 AD2d 47; *Chemical Leaman Tank Lines v Stevens,* 21 AD2d 556; see, also, *Kelly v Wasserman,* 5 NY2d 425).

The police reports underlying the Liquor Authority report were inadmissible insofar as they contained hearsay statements relevant to ultimate issues of fact not within the personal knowledge of the Sheriff Deputies. Their inclusion in summary form in the investigative report of the Liquor Authority neither gave an aura of respectability to that report nor corrected the deficiencies which rendered the police reports independently inadmissible. Clearly, the Liquor Authority report, because of this, does not qualify as an admissible business record[*] (see *People v*

---

[*] Although the issue has not been raised on this appeal, we note that the best evidence rule applies to business records (see Richardson, Evidence [Prince, 10th ed], § 570; 5 Frumer & Biskind, Bender New York Law and Proof, § 374.01 [2]). Except where it is customary business practice to prepare a summary from daily records, it is

*Gower,* 42 NY2d 117; cf. *R & I Electronics v Neuman,* 81 AD2d 832, lv to app den 54 NY2d 605 [summary of gross profits prepared from original bills]; *Erecto Corp. v State of New York,* 29 AD2d 728 [summary of business charges compiled from other business records]).

Moreover, the investigative report contains inadmissible conclusions and opinions of the deputies who investigated the incidents and were interviewed by the Liquor Authority investigator. As a general rule "an entry of a conclusory statement in a business record is not admissible if the entrant would not have been allowed to testify to that conclusion were he called as a witness upon trial." (Richardson, Evidence [Prince, 10th ed], § 305, p 282; cf. *People v Kohlmeyer,* 284 NY 366 [doctor's diagnosis in hospital record]). "The business entry statute lifts the barrier of the hearsay objection; it does not overcome any other exclusionary rule which might properly be invoked" (*Toll v State of New York,* 32 AD2d 47, 50, *supra;* see, also, *Werber v City of New York,* 87 AD2d 768; *Murray v Donlan,* 77 AD2d 337, 347, app dsmd 52 NY2d 1071).

Obviously the police officers whose conclusions and opinions are contained in the investigative report would not have been permitted to testify to them had they been called as witnesses at the trial (see Richardson, Evidence [Prince, 10th ed], § 361). It is the sole province of the jury to draw inferences from the facts. The opinions of the individual deputies summarized by the Liquor Authority investigator are conclusions which only the jury could draw after having heard the evidence (see *Bothner v Keegan,* 275 App Div 470, 472).

The admission of the Liquor Authority report in evidence was, therefore, error. The error was prejudicial, particularly in view of the award of punitive damages, because the inadmissible conclusions and opinions contained in the report were highly inflammatory. Further, the report could appear to the jury as an official determination after investigation of matters which go to the heart of this case, i.e., whether defendant acted negligently in

generally the law that entries in a business record be "original" entries and not mere transcribed records or copies (see McCormick, Evidence [2d ed], § 307, p 721; see, also, *R & I Electronics v Neuman,* 81 AD2d 832).

failing to control her patrons and to take precautions for the patrons' safety (see *Mahon v Giordano,* 30 AD2d 792, 793; see, also, *Werber v City of New York, supra*).

Other issues raised on this appeal have been examined and found to be without merit.

Accordingly, the judgment should be reversed and a new trial granted.

HANCOCK, JR., J. P., CALLAHAN, DENMAN and BOOMER, JJ., concur.

Judgment unanimously reversed, on the law and facts, with costs, and a new trial granted.